UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | |
|---|---|
| JOSEPH W. DICKEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:05-CV-574 |
| ) | (Phillips) |
| BULL MOUNTAIN DEVELOPMENT CO., et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This is an action to recover on three promissory notes. Plaintiffs have moved for partial summary judgment. Because there are disputed issues of fact as to the claims in this case, plaintiffs' motion will be denied.

### Background

The events giving rise to this litigation began in 2001. At that time, John Baugues, a principal of Bull Mountain Land Company, LLC, an affiliate of defendants, met plaintiff Joseph Dickey through a mutual acquaintance. At the time, Dickey was a principal in the consulting firm FGS & Associates, LLC, whose other principals were plaintiff Peter Chang and Ronald Hall, who is the husband of plaintiff Tonya Hall.

FGS contracted with Bull Mountain Land Company to perform services related to the feasibility of constructing a coal-fired electric plant in Montana near Bull

Mountain's property. FGS originally agreed to do this work in exchange for a royalty of 10 cents (10¢) per ton of coal mined on Bull Mountain's property. Bull Mountain Development Corporation (BMDC) was formed in 2002, with Dickey becoming its twenty percent (20%) owner and president. The plan was for BMDC, with Dickey's help, to obtain the permits, contracts and other approvals that would be needed to commence the power plant project. Once the approvals were obtained by BMDC, Dickey hoped to find a third-party that would purchase, for a substantial sum, the permits for and right to pursue the power plant project.

Throughout 2002, FGS performed work and incurred expenses related to obtaining the necessary approvals and permits for the power plant project, for which it rendered monthly invoices to defendants. The amount due on the FGS invoices grew to approximately $1,300,000 by February 2002. Defendants could not pay FGS and this resulted in FGS having to pay subcontractors using its own funds. In January 2003, Dickey and John Baugues began to discuss the possibility of soliciting loans from individuals to raise the funds needed to pay FGS's subcontractors. Because they knew that the money had to be raised quickly, they agreed to offer potential lenders an extra incentive to induce them to lend money to BMDC.

Dickey and Baugues decided to offer potential lenders the right to choose between two different incentives. In addition to a fifteen percent (15%) interest rate, lenders could choose to receive either (1) a bonus payment on the due date of their loan equal to the full principal amount of their loan, or (2) an eighty (80) year royalty on coal sales from the mining of 4,216 acres of land held by BMP Investments. In February 2003,

Dickey, on behalf of FGS, executed two promissory notes evidencing loans he had solicited and obtained in support of the efforts of BMDC and FGS. These two notes, respectively, obligated FGS to pay plaintiffs Peter and Cecilia Chang the principal sum of $180,000 and to pay plaintiff Tonya Hall the principal sum of $50,000.

At the same time, Dickey also arranged for FGS to execute a note in his own favor for the principal sum of $425,000. The circumstances surrounding FGS's note to Dickey were somewhat different from those relating to FGS's notes to the Changs and Hall. While the note that FGS delivered to Dickey purported to evidence a new loan made in February 2003 for $425,000 (for which Dickey also received the extra inducement of a corresponding eighty year royalty agreement from BMP Investments), Dickey concedes that $100,000 of the $425,000 loan was actually advanced by Dickey to FGS in December of the prior year, more than two months before FGS delivered the $425,000 note to Dickey. Dickey did not remember informing anyone at the time that $100,000 of his purported $425,000 loan included an advance made to FGS months earlier.

The express purpose of the loans that FGS hoped to obtain through the special inducement of offering the eighty year royalty agreements was to raise money needed to pay FGS's subcontractors. However, $200,000 of the $425,000 note that Dickey received from FGS was neither funded by Dickey nor used by FGS for this express purpose. Instead, Dickey admits that rather than advancing this $200,000 to FGS to pay outstanding subcontractor bills, Dickey credited FGS in respect of amounts that Dickey claimed that FGS owed him for other purposes.

Each of the three February 2003 promissory notes provided for interest at the rate of fifteen percent (15%) per annum. The proceeds of the notes were at all times controlled by Dickey. At the same time, Dickey arranged for defendant BMP Investments to execute Overriding Royalty Agreements in favor of each of the note holders as the "extra inducement" for the loans evidenced by the three promissory notes. BMP investments asserts it received no consideration in exchange for the royalty agreements beyond the loans to FGS.

When the original notes came due in October 2003, Dickey approached Hall and the Changs about renewing their notes and rolling the unpaid 15% interest into the principal balance of the loans. Hall and the Changs agreed, but this time, it was BMDC that executed the renewal notes, which included in their face amounts, capitalized interest on the original FGS note balances at the rate of 15% per annum. As a result, BMDC became the obligor on the loans that were originally made by Hall and the Changs to FGS. Additionally, because of the capitalization of the unpaid 15% interest, the principal amount of Hall's note was ultimately increased from $50,000 to $63,250, and the face amount of the Changs' note was ultimately increased from $180,000 to $227,000. Dickey received a new note from BMDC for $467,500.

BMDC ultimately obtained the necessary permits to build the Montana power plant, however, no third-party has purchased the right to pursue the plant. Defendant BMP Investments made payments in accordance with the formulas provided for under the

Overriding Royalty Agreements until August 2004. Plaintiffs filed the instant action on December 20, 2005.

Plaintiffs have sued to recover amounts due in respect of the loans evidenced by the three promissory notes. BMDC is the maker of each of the Notes. Each Note provides that BMDC shall pay interest on the principal amount of the Notes at a rate per annum equal to fifteen percent (15%). The Notes also provide that "in no event and under no circumstances shall the Borrower be liable for the payment of interest in excess of the maximum rate permitted by such applicable law, from time to time in effect."

Plaintiffs have also sued to recover amounts due under the three Overriding Royalty Agreements executed in favor of each plaintiff by defendant BMP Investments, Inc. in February 2003. These agreements each purport to run for eighty (80) years through 2083. BMP Investments granted these royalties with respect to coal located under 4,216 acres of land in Montana, to which BMP Investments held the mining rights. Dickey testified that the sole basis for the granting of the Overriding Royalty Agreements was to provide each plaintiff with an additional inducement to make the underlying loans evidenced by the BMDC Notes. BMP Investments states that no separate consideration beyond the underlying loans to BMDC was given for the royalty agreements.

Plaintiffs move the court for partial summary judgment (1) establishing that the plaintiffs are entitled as a matter of law to recover from BMDC the principal amounts of the promissory notes sued on, together with the interest provided by applicable law; (2)

establishing that the Overriding Royalty Agreements between plaintiffs and BMP Investments are binding obligations of BMP; (3) establishing that the Security Agreements between the plaintiffs and BMDC are binding obligations of BMDC; and (4) dismissing defendants' counterclaim against plaintiff Dickey.  Defendants have responded in opposition stating that there exist genuine issues of material fact (1) as to whether the underlying loans evidenced by the three promissory notes were ever fully funded; (2) as to whether the promissory notes are usurious on their face, rendering the notes unenforceable; (3) whether the Overriding Royalty Agreements are disguised agreements to pay additional usurious interest on the loans evidenced by the promissory notes; and (4) whether plaintiff Dickey breached his fiduciary duty to defendants, thus invalidating the promissory notes.

## Analysis

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990).  A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-

movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

There is no dispute that defendant BMDC issued and delivered the promissory notes that the plaintiffs seek to enforce. BMDC likewise admits that it entered into the Security Agreements at issue. Nor do defendants deny the authenticity of the Overriding Royalty Agreements entered into by BMP Investments. Instead, defendants assert that BMDC did not receive loan proceeds or other value to the extent of the total principal amount of the promissory notes sued on, and they argue that BMDC has a defense of failure of partial or total consideration affecting the enforceability of the Overriding Royalty Agreements and the Security Agreements. The defendants also plead usury as a defense to enforceability of the promissory notes.

Usury has four elements: (1) a loan or forbearance, either express or implied; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than allowed by law; and (4) an intention to violate the law. *Jenkins v. Dugger,* 96 F.2d 727, 729 (6th Cir. 1938) (applying Tennessee law). The intention to violate the law, as a necessary element of usury, may be implied if the other elements are present. *Id.*. A contract is usurious "when there is any contingency whereby a lender may get more than the lawful rate of interest. It does not depend on whether the lender actually gets more than is lawful, but whether there was a purpose to obtain more

than legal interest for the use of his money, and whether the terms of the transaction and the means used to effect the loan are appropriate to that end." *Id.*

Under the express terms of each Note, BMDC is not liable for any payment of interest over the maximum allowed by law. Paragraph Eight of each BMDC Note includes the following provision:

> In the event that a court of competent jurisdiction shall finally determine that any rate of interest which this Note bears is usurious under applicable law, then such rate automatically shall be reduced to the highest rate allowed by applicable law, and all excessive interest payments on this Note made prior to such decision shall be automatically be deemed to have been applied to principal instead.

Additionally, the last paragraph of each Note provides that "in no event and under no circumstances shall the Borrower be liable for the payment of interest in excess of the maximum rate permitted by such applicable law, from time to time in effect." Tenn. Code Ann. § 47-14-117(a) states that "any contract which on its face requires the payment of usury or excess loan charges, commitment fees, or brokerage commissions shall not be enforceable, but the original lender or creditor may sue to recover the principal actually advanced, plus lawful interest, loan charges, commitment fees, and brokerage commissions." Based on the record submitted by the parties, the court does not have sufficient information before it to undertake an analysis of defendant's defense of usury as to the promissory notes. Nor can the court find that plaintiffs are entitled to judgment as a matter of law on the promissory notes. The parties have presented differing issues of fact regarding the validity of the promissory notes and the rate of interest thereon. These

factual issues will have to be resolved at trial. Accordingly, plaintiffs' motion for summary judgment as to the promissory notes will be denied.

Next, defendants argue that the Overriding Royalty Agreements are nothing more than additional, usurious interest on plaintiffs' loans. Apart from the loan proceeds, defendants argue there was no separate consideration furnished by the lenders in exchange for the FGS Notes, their successor BMDC Notes, or the Overriding Royalty Agreements from BMP Investments. There also appear to be material issues of fact as to the intent of the parties for the issuance of the Overriding Royalty Agreements. Trials exist to resolve such questions of fact. Accordingly, plaintiffs have failed to show that they are entitled to judgment as a matter of law as to the Overriding Royalty Agreements.

In addition to the defense of usury, defendants claim that questions of fact exist as to whether they received consideration for the loans. Under Tennessee law, the want or failure, in whole or in part, of the consideration of a written contract, may be shown as a defense, total or partial, as the case may be, in an action on such contract, brought by anyone who is not an innocent and *bona fide* holder. Tenn. Code Ann. § 47-50-104. In this case, BMDC has demonstrated a genuine issue of material fact as to whether defendants received adequate consideration for the Notes.

First, defendants have raised questions of fact with respect to the circumstances surrounding Dickey's underlying loan to FGS, now evidenced by the note he received from BMDC. The original face amount of the note Dickey received from FGS

in February 2003 was $425,000. Dickey admits that of this $425,000 principal amount, $100,000 consisted of funds he advanced to FGS the prior December to fund FGS expenses previously incurred in connection with BMDC's power plant project. When Baugues consented to the borrowing of money by FGS in late January 2003, the reason for doing so was expressly agreed to be the need to raise money to pay FGS subcontractors. However, $200,000 of the $425,000 principal amount of Dickey's FGS Note appears not to have been funded or used for this purpose. Instead, Dickey claims to have increased the amount of the note to take into account $200,000 that he claims to have had the right to receive from FGS, while at the same time reducing an open receivable from BMDC to FGS. Thus, although Dickey's FGS Note was for $425,000, at least $300,000 of that sum did not consist of new funds to pay subcontractors, which was the agreed purpose of the FGS loans. Thus, there are material issues of fact regarding consideration for the loans, which make summary judgment in favor of plaintiffs inappropriate.

Last, defendant Dickey has moved for summary judgment on defendants' counterclaims against him for breach of fiduciary duty. However, as stated above, defendants have raised genuine issues of material fact as to Dickey's potential liability for a breach of his fiduciary duties to BMDC while he was its president and a member. BMDC is a limited liability company organized under the laws of Delaware. BMDC's LLC Agreement states that a member of the LLC is liable to the company to the extent that his conduct constitutes fraud, bad faith, negligence, gross negligence, willful misconduct, or breach of the LLC Agreement. Delaware law provides that an LLC agreement "may not

limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing." 6 De. C. § 18-1101(e).

The good faith duties of a member of an LLC include a duty of candor to the LLC's other members. *See In re: Bigmar, Inc., Section 225 Litigation,* 2002 WL 550469 (Del.Ch. 2002) (as fiduciary, member owed a duty of complete candor to other members, and was obligated honestly to provide full and fair disclosure of all material facts relating to any matter involving the LLC); *VGS, Inc. v. Catiel,* 2000 WL 1277372 (Del.Ch. 2000) (managers who took self-interested steps without notice to fellow manager breached duty of loyalty by failing to act in good faith).

Dickey owed BMDC a duty of good faith that required candor and honesty to the company. As discussed above, it appears that Dickey induced BMDC to execute a promissory note in his favor in the principal amount of $467,500 of which only $125,000 of new money Dickey advanced to FGS in February 2003. BMDC relied on Dickey's representations and good faith when consenting to the execution of the Overriding Royalty Agreement in his favor and the BMDC Note he received in October 2003. Accordingly, Dickey has not shown that he is entitled to summary judgment with respect to the counterclaims against him.

Conclusion

The plaintiffs in this case seek to recover under both a BMDC Note and the Overriding Royalty Agreements. As stated above, because material questions of fact exist

as to defendants' liability on the notes and the Overriding Royal Agreements, plaintiffs are not entitled to summary judgment on the promissory notes or the royalty agreements. Moreover, questions of fact exist regarding whether defendants received the full consideration contemplated in exchange for their execution of the BMDC Notes. Accordingly, the court finds that plaintiffs are not entitled to judgment as a matter of law, and their motion for partial summary judgment [Doc. 25] is **DENIED.** The parties will prepare the case for trial.

**ENTER:**


        s/ Thomas W. Phillips
      United States District Judge